UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENNIFER KINNEY, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:10-cv-00787-JMS-DML |
| | ) | |
| CENTURY SERVICES CORPORATION II d/b/a | ) | |
| AMERICAN SECURITY, | ) | |
|     *Defendant.* | ) | |

## ORDER

Plaintiff Jennifer Kinney brings this action against Defendant Century Services Corporation II, d/b/a American Security ("ASI") for allegedly interfering with her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 1601 *et seq.* and terminating her employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Presently before the Court is ASI's Motion for Summary Judgment. [Dkt. 38.]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. However, "conclusory statements backed by no evidence are insufficient to stave off summary judgment." *Keller v. Indiana*

*Family & Social Services Admin.*, 388 Fed.Appx. 551, 553 (7th Cir. 2010). Rather, a party asserting a fact must support the assertion by citing to particular parts of the record, including depositions, documents, affidavits, or depositions; or by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. 56(c)(1)(A)-(B). Affidavits or declarations must be made on personal knowledge and set out facts that would be admissible in evidence. Fed. R. 56(c)(4). A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. 56(c)(2). The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### EVIDENTIARY OBJECTIONS

The Court will resolve the parties' objections to material facts below.[1]

- ASI asserts: "11. On Sunday, May 3, Kinney telephoned interim Site Supervisor Sabrina Tinnell and asked Tinnell to falsely report to people at work that she (Kinney) was still in the hospital. (Kinney Dep. Ex. D)."

[Dkt. 38 at 2.]

Ms. Kinney objects on the ground that the statement is untrue hearsay. As an initial matter, a closer look at Ms. Kinney's testimony cited to support ASI's assertion actually indicates that she asked Ms. Tinnel *not* to tell Ms. Ruckman that she was still in the hospital. [Dkt. 39-3 at 7.] This asserted fact is therefore contradicted by Ms. Kinney's testimony. Where

---

[1] While the parties may have disputed other facts, the Court only resolved disputes as to those facts it deemed material.

a party fails to support an assertion of fact as required by Rule 56(c), the Court disregards it.  The Court sustains Ms. Kinney's objection and does not consider this alleged statement on summary judgment.

- ASI further asserts:  "12. Contrary to ASI's policy and practice, Kinney did not notify Ruckman that she would not return to work on Monday.  (Kinney Dep. 22: 12-14; Kinney Dep. Ex. C)."

Ms. Kinney objects to this statement on the ground that the evidence to which ASI cites does not support it.  In response to Ms. Kinney's objection, ASI argues that insofar as it was Ms. Kinney's policy and practice to report absences to Ms. Ruckman, "common sense dictates" that "Kinney cannot on the one hand admit it was her practice to report absences to Ruckman, yet on the other hand deny it was ASI's practice."  [Dkt. 44 at 2.]  Common sense, however, does not equate to admissible evidence of a policy and practice by ASI.  The Court finds that Exhibit C does not support ASI's claim that Ms. Kinney was required to contact Ms. Ruckman in addition to her acting shift supervisor. Fed. R. 56(c).  The Court sustains this objection and reminds ASI of its obligations to support its assertions on summary judgment with admissible evidence.   The Court also reminds ASI that as the moving party it is not entitled to draw inferences in its own favor, and neither will the Court.  The evidence must be considered giving all reasonable inferences to Ms. Kinney.

- ASI further asserts:  "13. Ruckman expected Kinney to return to work on Monday morning, and when Kinney did not arrive, Ruckman telephoned Kinney at home. (Kinney Dep 29: 6-12)."

Ms. Kinney objects to this assertion on the basis that the evidence cited by ASI does not support it.  [Dkt. 40 at 2.]  Indeed, there is no evidence in the record to support the claim that Ms. Ruckman expected Kinney to return to work on Monday, May 4, or that it was Ms. Ruckman

who initiated the telephone call to Ms. Kinney. Again, where assertions are not properly supported under Rule 56(c), the Court disregards them—the objection is sustained.

- ASI further asserts: "59. On May 31, Ruckman was advised by the third shift supervisor, Kate Piatt, that Kinney had failed to enforce the ban on use of personal cell phones among the guards. (Ruckman Aff. ¶ 36)."

Ms. Kinney raises a hearsay objection as the alleged statements by Kate Piatt are not supported by deposition, declaration or affidavit. ASI responds by arguing that it is not offering this statement to prove the truth of the matter asserted, but rather as background information to demonstrate the basis for the investigation into Ms. Kinney's behavior. The Court finds, however, that ASI's justification still depends on the admissibility of the statement for the truth of the matter asserted: that Ms. Piatt advised Ms. Ruckman that Ms. Kinney had failed to enforce the ban on use of personal cell phones among the guards. Presumably, ASI could have submitted admissible evidence from Piatt regarding these alleged assertions. Instead, ASI chose to attempt to introduce hearsay testimony into evidence—the assertion is inadmissible as evidence, and the Court will disregard it.

- ASI further asserts: "64. Ruckman learned[2] that while Tinnell prepared the initial calculation for time reports with the actual hours Kinney worked, including late arrivals and absences, Kinney later would alter the reports to reflect she worked a full schedule prior to turning the time over to payroll. (Ruckman Aff. ¶ 40). "

Ms. Kinney objects as to proper foundation under Rule 602. And given that Ms. Ruckman does not establish personal knowledge of the facts cited, Ms. Kinney further characterizes this statement as inadmissible hearsay. Indeed, ASI has not laid a foundation

---

[2] ASI's use of the word "learned" invites the objections made by Ms. Kinney. It is unclear whether the information was "learned" from inadmissible hearsay, from business records, from personal knowledge or some other means. ASI's general arguments as to Ms. Ruckman's ability to testify as to corporate information, do not adequately meet the objection.

showing Ms. Ruckman's personal knowledge regarding the time reports as required by Rule 56 and Rule of Evidence 602; the statement is therefore inadmissible.

- ASI further asserts: "65. Following the termination of Kinney's employment, Ruckman learned that many time records and control log reports from Kinney's tenure as Site Supervisor were missing from the AISIN site. Specifically, none of the time records or control logs from 2008 could be found and only three time cards for 2009 were located. (Ruckman Aff. ¶ 41)."

Ms. Kinney again objects as to foundation under Rule 602 and thus characterizes this assertion as hearsay under Rules 801 and 802. [Dkt. 40 at 6.] Furthermore, Ms. Kinney argues, insofar as this assertion allegedly occurred after she was fired, it is irrelevant with respect to the termination decision at issue. Because Ms. Ruckman allegedly learned this after Ms. Kinney's termination, the Court finds that they are irrelevant to the employment decision at issue. Ms. Kinney's objection is sustained.

- ASI further asserts: "66. Sabrina Tinnell indicated in a written statement on August 7, 2009, that she witnessed Kinney gather up a stack of control logs and time cards on May 21, 2009 (the day Kinney received her Decision Day). Kinney left the office with the records and returned a short time later. Kinney told Tinnell she shredded the records. (Dep. Ex. I)."

Ms. Kinney objects on the ground that this is inadmissible hearsay that also violates Rules 401 and 402. The Court agrees with Ms. Kinney's hearsay objection and therefore disregards this assertion. [Dkt. 39-3 at 55]. Again, ASI should have submitted an affidavit or declaration from Ms. Tinnell, but failed to do so.

- ASI further asserts: "67. Ruckman believes Kinney destroyed the documents to prevent ASI from establishing she had falsified time records. (Ruckman Aff. ¶ 43)."

Ms. Kinney objects to this statement under Rules 401 and 402. Insofar as this assertion concerns an opinion Ms. Ruckman developed based upon information allegedly obtained

following the termination of Kinney's employment, it is irrelevant to the termination decision at issue. The Court sustains the objection.

ASI likewise posits several objections to Kinney's asserted facts.

- Ms. Kinney asserts: "74. After Kinney answered Ms. Ruckman's questions regarding the reason she was taking leave, Ms. Ruckman stated that she "thought it was ridiculous," she believed Kinney was "overreacting," said that "people get sad all the time, why do you think you need to go somewhere for it," and informed Kinney that it made her doubt Kinney's competence." (Kinney Dep., pg. 16, ln 18 – pg. 17, line 18.)"

ASI objects to these statements on the ground that they are untrue; if they were true, ASI argues, Ms. Kinney would have reported them to a coworker or to the CEO of the company. [Dkt. 44 at 7-8.] But the statements are admissible as statements by a party opponent under Rule 801(d)(2). Furthermore, on summary judgment, the Court is not permitted to make credibility determinations, and it is the non-moving party who is entitled to the benefit of all reasonable inferences. Ms. Kinney has relied on admissible evidence to support the foregoing statement, and that's all she has to do. It is up to the jury to determine how much weight to afford Ms. Ruckman's alleged statements. This is not an objection properly raised at summary judgment, and the Court overrules it.

- Ms. Kinney further asserts: "75. During a meeting on May 4, 2009, Ms. Ruckman informed Mr. Huls that she wanted to 'go slowly' with the termination of Kinney's employment because Defendant wanted to try to avoid a lawsuit by Kinney. A decision was then made that Kinney's employment would be terminated by June 1, 2009 (Declaration of Jennifer Kinney, Exhibit 1, pg. 2). "

ASI objects to Ms. Kinney's characterization of Ms. Ruckman's notes based on the best evidence rule. [Dkt. 44 at 8.] But the best evidence rule does not apply here, as Ms. Kinney is not offering this evidence to show what is contained in the notes themselves—but rather to show that Ms. Ruckman required Ms. Tinnell to re-write the statement, as testimony elsewhere

confirms. [Dkt. 39-3 at 10.] The Court resolves factual disputes in favor of Ms. Kinney, as it must on summary judgment, *Celotex*, 477 at 330, and overrules ASI's objection.

- Ms. Kinney further asserts: "77. Mr. (sic) Tinnell provided the written statement to Ms. Ruckman on May 5, 2009. After reviewing the statement, Ms. Ruckman questioned Ms. Tinnell about the statement and then instructed her to rewrite the statement. (Declaration of Jennifer Kinney, Exhibit 1, pg. 3)."

ASI objects to Ms. Kinney's characterization of this conversation on the basis of the best evidence rule. [Dkt. 44 at 9.] Because Ms. Tinnell's notes are part of the record, the Court will consider the notes themselves, rather than Ms. Kinney's paraphrasing of them. [*See* dkt. 40 at 9; *see also* dkt. 41-1 at 5.] To that extent ASI's objection is sustained. However, in reviewing the notes themselves, the Court will of course afford Ms. Kinney the benefit of reasonable inferences.

### III.
#### BACKGROUND

The following is a summary of the facts supported by admissible evidence and viewed with reasonable inferences in favor of Ms. Kinney.

Ms. Kinney was hired by ASI in February 2008 as a security guard for one of ASI's related plants, AISIN USA, located in North Vernon, Indiana ("AISIN"). [Dkt. 39-3 at 3.] In June 2008, Ms. Kinney was promoted to Site Supervisor for the AISIN site. [*Id.*] Since November 2008, she has been continuously treated for depression. [Dkts. 41-1 at 13; 41-3 at 1.]

**A) Ms. Kinney's Leave and Return to Work**

On April 27, 2009, Ms. Kinney requested a leave of absence to receive inpatient treatment for depression from Karen Ruckman, her supervisor and Regional Manager at ASI. [*Id.* at 4-5.] That request was the first time Ms. Ruckman and ASI had heard of Ms. Kinney's depression. [Dkt. 39-1 at ¶ 4.] Ms. Kinney explained that she needed leave in order to get

inpatient treatment for depression and for suicidal thoughts, to which Ms. Ruckman responded that she "thought it was ridiculous," and that she believed Ms. Kinney was "overreacting," and that "people get sad all the time, why do you need to go somewhere for it[?]"  [Dkt. 41-1 at 2.]  Ms. Ruckman further indicated to Ms. Kinney that her request made her doubt Ms. Kinney's competence.  [*Id*.]

ASI nevertheless approved Ms. Kinney's leave request.  [*Id*. at ¶ 5.]  Ms. Ruckman advised Kinney that she would need to provide a return to work certification from her medical provider to return to work.  [Dkt. 39-3 at 5.]

On April 28, Ms. Kinney began her leave—she was released from the inpatient program four days later, on Saturday, May 2.  [Dkt. 41-1 at 2.]  On Monday, May 4, Ms. Kinney was given a return to work slip allowing her to return to work without restrictions.  [*Id.* at 2.]

Ms. Kinney did not notify Ms. Ruckman that she would not return to work that Monday, May 4, before her shift started.  [Dkt. 13-3 at 6.]  Although it was ASI's policy that guards contact their respective site supervisors when late or absent, [dkt. 39-3 at 44], Ms. Kinney did not believe that she was required to report an extension of her FMLA leave request to Ms. Ruckman. [Dkt. 39-3 at 8; dkt. 44 at 2 fn 1.]

Later on May 4, Ms. Kinney and Ms. Ruckman spoke on the phone, and Ms. Kinney told Ms. Ruckman she would return to work the following day, Tuesday, May 5.  [*Id.*]  Ms. Ruckman agreed to meet Ms. Kinney before her 5:00 am shift the next morning, at which point Ms. Kinney understood that she was to present her return to work release.  [*Id.*]

On Tuesday, May 5, Ms. Kinney met Ms. Ruckman at 4:40 am, but she had forgotten her return to work note.  [*Id.*]  Ms. Ruckman told her that she could not work that day; in so doing, she rejected Ms. Kinney's request to go home and get the note.  [*Id.*]  Still, Ms. Kinney told Ms.

Ruckman she was going home to retrieve the release, and she returned with it between 4:50 and 4:55 am before her shift was scheduled to begin.[3]  [*Id.*]

By that point, Ms. Ruckman (who manages several ASI sites) had left AISIN, so Ms. Kinney called to tell her that she had her return to work note and asked if she could fax it to her. [*Id.*]  After an argument, Ms. Ruckman instructed Ms. Kinney to give the paperwork to Ms. Tinnell and leave, [dkt. 39-3 at 8], refusing to let Ms. Kinney work that day.  [Dkt. 39-1 at ¶ 27.] Ms. Kinney reported the incident to Terry Fischer, the company's CEO.  [*Id.*]

When Ms. Kinney learned she could not work, she used one of her paid vacation days and returned to work the following day, on May 6.  [Dkt. 41-1 at 15.]

**B)  Meetings Regarding Ms. Kinney's Performance at ASI**

On April 27, Ms. Kinney told Luke Huls that she was taking medical leave because of emotional trouble.  Mr. Huls was responsible for overseeing AISIN's security operation and Ms. Kinney's primary point of contact at that location.  [Dkt. 39-2 at ¶¶ 1, 5.]

On April 30, while Ms. Kinney was on leave, Mr. Huls requested a meeting with Ms. Ruckman to discuss security.  [Dkt. 39-1 at 1, 5.]   At the meeting, held on May 4, Mr. Huls reported that he had reservations about Ms. Kinney's leadership abilities "at the time she was promoted to Site Supervisor due to her lack of supervisory experience.  However, AISIN was undergoing a series of layoffs and [his] focus was on internal issues rather than their security contract." [Dkt. 39-2 at ¶ 4.]

---

[3] ASI asserts that "the time [Ms. Kinney] returned is immaterial."  [Dkt. 44 at 6.]  But in the same breath, ASI frames its FMLA defense around her tardiness.  When Ms. Kinney returned to work is thus material.  To that end, ASI claims that Ms. Kinney returned with her paperwork at 5:15 am.  [Dkt. 39-1 at ¶ 25.]  Consistent with U.S. Supreme Court authority, the Court resolves "any doubt as to the existence of a genuine issue for trial . . . against the moving party."  *Celotex*, 477 U.S. at 330 n.2.

Mr. Huls advised Ms. Ruckman that the guard staff was "unprofessional and that [Ms.] Kinney was failing to exercise proper supervision over her employees." [*Id.* at ¶ 7.] Mr. Huls expressed concern that the guards were working out of uniform, using personal cell phones while on duty, and conducting patrols and taking meal breaks in pairs rather than on a staggered basis to ensure full coverage as required. [*Id.* at ¶ 9; dkt. 39-3 at 58-54, 62.][4] Mr. Huls noted that Ms. Kinney often "arrived at work late and left early without notifying him of her intent and therefore it had been difficult to maintain the open line of communication he needed with the Site Supervisor." [Dkt. 39-2 at ¶¶ 9-10.] As a result of these concerns, Mr. Huls told Ms. Ruckman that he had lost confidence in Ms. Kinney's ability to lead the guard staff as Site Supervisor and no longer trusted her with the safety and security of the plant. [*Id.* at ¶ 11.]

The notes Ms. Ruckman took during the meeting state:

> Mr. Huls is adamant that Ms. Kinney be replaced as the Site Supervisor. This is primarily due to his loss of trust in her and her staff. He feels the staff, i.e., Sabrina Tinnell are less than honest when he has questions about [Ms.] Kinney. I discussed the lawsuit we recently had and explained that we did not want to go through another one and we would have to go slowly. He is fine with this as long as the change is made before June 1, 2009.

[Dkt. 39-1 at 5.]

Also while Ms. Kinney was on leave, Ms. Ruckman instructed Ms. Tinnell to write a statement regarding Ms. Kinney, which Ms. Tinnell provided on May 5. [Dkt. 41-4 at 5.] After reviewing the statement, Ms. Ruckman asked Ms. Tinnell to rewrite it. [*Id.*; dkt. 39-3 at 10.]

### C) Ms. Kinney's Termination from ASI

---

[4] ASI cites to "Exhibits R and Q" in support of the proposition that ASI prohibits using personal cell phones while on duty. [Dkt. 38 at 4.] Exhibit R, however, is Ms. Kinney's psychological evaluation. [Dkt. 41-3 at 1.] The Court once again reminds counsel of its obligation to direct the Court to accurate portions of the record as factual support for its motion. Fed. Rule 56(b).

On May 6, Ms. Kinney met with Ms. Ruckman, who informed Ms. Kinney that Mr. Huls had serious concerns about her job performance and that Ms. Kinney would have to correct the issues immediately. [Dkt. 39-1 at ¶ 29.] Ms. Ruckman issued Ms. Kinney a "letter of reprimand for her defiant attitude" the day before when she was not allowed to return to work, informing her that further disrespectful behavior would not be tolerated. [Dkt. 39-3 at 52.]

Also on May 6, Ms. Ruckman rejected Ms. Kinney's decision concerning a third shift supervisor, whereas other site supervisors had input on hiring decisions. [Dkt. 41-4 at 9-10; dkt. 41-1 at 14.]

On May 9, Ms. Ruckman called a meeting with the guard staff at AISIN to reiterate ASI's rules, particularly those regarding uniforms, cell phone usage, and expectations for security coverage during breaks and patrols. [Dkt. 39-1 at ¶ 30.] At that time, Ms. Ruckman informed Ms. Kinney and the guards whom Ms. Kinney had formerly supervised that decisions regarding ASI's work at the AISIN facility would now be going through Ms. Ruckman and not through Ms. Kinney. [Dkt. 39-3 at 11.] After the meeting, Ms. Ruckman met with Ms. Kinney separately to reiterate the importance of enforcing the rules among guards consistently. [Dkt. 39-1 at ¶ 31.] Ms. Kinney considered Ms. Ruckman's public announcement the removal of her supervisory authority over guards, including the ability to enforce the guards' compliance with ASI's policies. [Dkt. 39-3 at 11.]

On May 21, Ms. Ruckman observed Ms. Kinney and two other guards taking their lunch break together; consequently, there was no guard in one of the offices and no guard conducting patrols of the facility. [Dkt. 39-1 at ¶ 32, 33.] At that time, Ms. Ruckman issued Ms. Kinney a final written warning. [Dkt. 39-3 at 53.] The warning stated that Ms. Kinney "fail[ed] to follow orders . . . [and] fail[ed] or refus[ed] to follow the policies of ASI security . . ."; that she

committed to improve by following orders and policies; and that if she failed to improve, she would be fired. [*Id.*] Neither of the other two guards was disciplined. [Dkt. 41-2 at ¶ 5.]

On June 1, Ms. Ruckman visited AISIN unannounced and observed guards using personal cell phones and wearing earrings, which were considered a uniform violation. [Dkt. 39-1 at ¶ 37.] Ms. Ruckman fired Ms. Kinney that day for "violating the [final written warning]." [Dkt. 39-3 at 54; dkt. 39-1 at ¶ 38.] Ms. Ruckman did not discipline any of the guards who were using personal cell phones or wearing earrings. [Dkt. 41-2 at ¶ 7.]

Prior to the termination of Ms. Kinney's employment, Ms. Ruckman was investigating a report by Ms. Tinnell that Ms. Kinney had falsified time records. [Dkt. 39-1 at ¶ 40.]

## IV.
### DISCUSSION

Ms. Kinney argues that ASI interfered with her rights under the FMLA by refusing to allow her to return to work when she provided the requisite paperwork and by failing to give her notice of her rights and responsibilities under the FMLA. She further argues that the termination of her employment constituted unlawful discrimination under the ADA. ASI requests summary judgment on both claims.

### A) FMLA Interference Claim

To establish an FMLA interference claim, Ms. Kinney must show (1) she was eligible for the FMLA's protections; (2) ASI was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) ASI denied her FMLA benefits to which she was entitled. *Cracco v. Vitran Express Inc.*, 559 F.3d 625, 635-36 (7th Cir. 2009). There is no dispute that elements one through four are met here. [Dkt. 38 at 10.] The parties only dispute whether ASI denied her benefits under the FMLA.

### 1. ASI's Refusal to Reinstate Ms. Kinney on May 5

Ms. Kinney argues that ASI denied her benefits to which she was entitled under the FMLA by refusing to allow her to return to work on May 5. ASI maintains, however, that Ms. Kinney has no FMLA claim because ASI had the right to delay her restoration until Ms. Kinney produced her return to work release.

"On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214. An employer may, however, delay restoration until assured that the employee is able to return to work. 29 C.F.R. § 825.312(e) ("An employer may delay restoration to employment until an employee submits a required fitness-for-duty certification . . .").

ASI argues that "in order to succeed on this argument, Kinney would have to establish she was unaware of ASI's requirement to provide such documentation prior to returning to work." [Dkt. 38 at 14.] But the Court does not believe Ms. Knney's lack of awareness is actually the determinative fact. Indeed, Ms. Kinney admits that she understood she was supposed to bring her return to work release on May 5. [Dkt. 39-3 at 8.] Instead, given that the parties agree that ASI would have been required to restore her job if she had presented her return to work release before her shift, the dispositive fact is whether Ms. Kinney did in fact present her return to work release before her shift began.

Ms. Kinney arrived at the ASI facility bearing her return to work form on May 5 between approximately 4:50 and 4:55 am, before her 5:00 am shift. Because Ms. Ruckman was not present, Ms. Kinney called to tell her she had the requisite paperwork and asked if she could fax it to her. Ms. Ruckman instructed Ms. Kinney to give the paperwork to Ms. Tinnell; Ms. Kinney complied but was nevertheless not allowed to return to work.

The Court therefore finds that Ms. Kinney has at least raised a genuine issue of fact as to whether she was improperly denied her right to be restored to work on May 5 under the FMLA.

### 2. ASI's Failure to Provide FMLA Paperwork

Ms. Kinney further argues that ASI violated her rights under the FMLA by failing to provide her with proper FMLA paperwork. ASI admits that it did not provide Ms. Kinney with paperwork certifying her leave as FMLA or giving her notice of her obligations. [Dkt. 38 at 14.] ASI maintains, however, that even if it did not technically follow the FMLA regulations, Ms. Kinney suffered no actual harm by virtue of this oversight and, consequently, she is not entitled to recover on her FMLA interference claim. [Dkt. 38 at 10.]

When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b). Employers are required to set forth, in writing, the specific expectations and obligations placed upon an employee and to explain the consequences of failing to meet these obligations each and every time the eligibility notice is provided. 29 C.F.R. § 825.300(c). "Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e).

However, the FMLA does not entitle an employee relief unless the employee was prejudiced by the violation. 29 CFR 825.301(e). *See also Franzen v. Ellis Corp.*, 543 F.3d 420 (7th Cir. 2008). In other words, technical violations of the FMLA are not actionable. *Ragsdale v. Wolverine World Wide,* 535 U.S. 81 (2002). Rather, for an employee to recover under the

statute, she must have suffered actual harm. *Harrell v. United States Postal Service*, 44 F.3d 913 (7th Cir. 2006).

Here, ASI admits that it did not provide Ms. Kinney with any documentation relating to the FMLA, including FMLA certification paperwork, FMLA designation notices, and FML eligibility notices. [Dkt. 38 at 13-14,] The only dispute is whether ASI's admitted failure to follow the FMLA regulations caused Ms. Kinney any actual harm. And the only potential harm at issue here is the loss of one paid vacation day.

ASI maintains that its violation did not cause any actual harm—that Ms. Kinney "chose" to use her vacation day and did not "lose" it when she "failed to provide her return to work paperwork at the time agreed upon," which she understood she was required to do. [Dkt. 44 at 10.] ASI's "technical violation" of the FMLA, it argues, had nothing to do with that.[5]

It is undisputed, however, that Ms. Kinney would not have had to make this "choice" but for her inability to return to work. In other words, it is undisputed that if she could have chosen to work for her pay on May 5, she would have. Taking the evidence in the light most favorable to Ms. Kinney, the Court can reasonably infer that Ms. Kinney's "decision" to use a paid vacation day was not much of a choice at all. Ms. Kinney thus raises a genuine issue of fact concerning whether she suffered actual harm by virtue of ASI's failure to follow the regulations set forth in the FMLA.

---

[5] Although Ms. Kinney claims in response that she did not know that she was obligated under the FMLA to provide her return to work release because she was not given sufficient paperwork by her employer, this argument does not stand up next to her deposition, in which she admitted that she understood she was supposed to bring her paperwork to Ms. Ruckman. [Dkt. 39-3 at 8 (dep. 30 at ln. 3).]

ASI's argument that Ms. Kinney alleges no more than a technical FMLA violation as a matter of law is thus unavailing; the Court denies its motion for summary judgment on Ms. Kinney's FMLA claim.

**B) ADA Claim**[6]

Ms. Kinney also claims that ASI discriminated against her based on her disability.

Under the ADA, "no [employer] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). To establish a prima facie case of discrimination under the ADA, an employee must first show she has a disability within the meaning of the ADA. To do so, she must establish: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such impairment; or (3) ASI regarded her as having such an impairment. *Roof v. Whitestone Acquisition Corp.*, 2010 U.S. Dist. LEXIS 107500 (7th Cir. 2010). She must then show that she was discriminated against on the basis of disability by her employer. 42 U.S.C.A. § 12112(a).

ASI maintains that Ms. Kinney cannot recover under the ADA because she is unable to establish she is a "qualified individual" as defined by the ADA and because, even if she could, there is no evidence the disability motivated the termination of her employment.

**1. Is Ms. Kinney a Qualified Individual Under the ADA?**

Although Ms. Kinney claims that her depression constitutes a disability, ASI argues that Ms. Kinney's claim fails because her "isolated bouts" of depression do not impair her major life activities under U.S.C. § 12102(1)(A).[7]

_____

[6] The parties agree that because this case was filed after the Amendments to the ADA ("ADAAA") became effective, the ADAAA applies to this case. [Dkt. 38 at 16; dkt. 40 at 18.]

Prior to the passage of the ADAAA, the Seventh Circuit frequently found "isolated bouts" of depression to be temporary impairments and not disabilities as defined by the ADA. *See Brunker v. Schwan's Home Service, Inc.*, 583 F.3d 1004, 1008 (7th Cir. 2009) (holding intermittent impairments such as isolated bouts of depression do not constitute "disabilities" under the ADA). The ADAAA, however, expressly aimed to expand the definition of disability and to shift the burden to the employer to comply with the regulations of the ADA. Pub.L. 110-325, §2(b)(1), (2), (4), (5). To that end, the ADAAA includes the provision that "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102 (4) (D).

Within the new paradigm of the ADAAA, the Seventh Circuit, has not addressed the extent to which intermittent depression, however severe, constitutes a disability. However, a similar issue was decided by the district court in *Hoffman v. Carefirst of Fort Wayne, Inc.*, where the court held an employee with cancer will be considered disabled even if the cancer is in remission at the time of the alleged adverse employment action. 737 F. Supp. 2nd 976, (N.D. Ind. 2010). After *Hoffman,* the United States Equal Employment Opportunity Commission ("EEOC") released regulations that also offer guidance as to the interpretation of the "episodic or in remission" language of the ADAAA. Comments to the regulations state: "This provision is intended to reject the reasoning of court decisions that certain individuals with certain conditions—such as epilepsy or post traumatic stress disorder—were not protected by the ADA because their conditions were episodic or intermittent." 29 C.F.R. § 1630(j)(1)(vii).

In this case, although there is no dispute that Ms. Kinney's depression did not impact her work performance following her return to work, [dkt. 38 at 7], there is also no dispute that,

---

[7] Ms. Kinney does not argue that she has a record of disability or that she is regarded as having a disability by ASI.

before she was hospitalized, Ms. Kinney advised Ms. Ruckman that Ms. Kinney's doctor recommended hospitalization because the depression was severe enough that Ms. Kinney was suicidal. Regardless whether her depression impacted her work when inactive, there is no question that, by its very nature, inpatient treatment substantially impacts (in fact, precludes) work performance and limits major life activities. Given Ms. Kinney's debilitating symptoms when her depression was active, the Court finds that Ms. Kinney's depression at least raises a genuine issue of fact as to whether she is a qualified individual under the ADA.[8]

### 2. Were ASI's Actions Discriminatory under the ADA?

ASI further argues that even if Ms. Kinney can establish that she is a qualified individual under the ADA, her claim fails because she was not discriminated against on the basis of her disability.

An employee alleging disability discrimination may prove her claim one of two ways: She may use the indirect method of proof, which requires a plaintiff to set forth a prima facie case of discrimination. Or a plaintiff can invoke the direct method, which requires direct or circumstantial evidence that allows a jury to infer that discriminatory intent motivated the adverse employment decision at issue. *Buie v. Quad/Graphics, Inc*., 366 F.3d 496, 503 (7th Cir. 2004); *Burnell v. Gates Rubber Co*., --- F.3d ---, 2011 WL 3132470, *3 (7th Cir. 2011). Ms. Kinney uses both the indirect and direct methods of proof to support her claim that ASI discriminated against her based on her disability. She devotes more time to the indirect method, so the Court will begin there.

### A. Indirect Method of Proof

---

[8] Whether an individual is disabled under the ADA is a mixed question of law and fact, and one that can be appropriate for submission to the jury. *See, e.g., Miller v. Illinois Dept. of Transp*., 643 F.3d 190, 194 (7th Cir. 2011).

To establish a prima facie case under the indirect method of proof, an employee must show that: (1) she is disabled as defined by the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action(s); and (4) similarly situated employees without a disability were treated more favorably. *Lloyd v. Swifty Transportation, Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). Once an employee has established a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for each adverse employment action. *Buie*, 366 F.3d at 503. If the employer meets this burden, the employee must be able to demonstrate that the employer's proffered nondiscriminatory reason for each adverse employment action is pretextual. *Id.*

The Court will assume, without deciding, that Ms. Kinney's depression constitutes a disability under the ADA. With respect to two of the remaining factors of her *prima facie* case, there is no dispute that Ms. Kinney's termination was an adverse employment decision.

The parties disagree about whether similarly situated non-disabled employees were treated more favorably than Ms Kinney, specifically arguing over whether Ms. Kinney offered comparator evidence that is credible, such that jury should be able to consider it. The Court finds the admissible evidence submitted by Ms. Kinney creates a genuine issue of fact. Specifically, a reasonable jury could find that Ms. Ruckman removed Ms. Kinney's supervisory authority, thereby reducing her to the same level as other guards. Thereafter, when Ms. Kinney was reprimanded for having lunch with two other guards—neither of whom were reprimanded— and was fired for failing to enforce the cell phone and earring rules—which other guards were breaking but for which they were also not reprimanded—Ms. Kinney was treated less favorably. Thus the Court rejects ASI's argument that the other guards are not proper comparators, particularly on summary judgment. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir.

2000) (To determine whether other employees are "similarly situated," the Court must "look to all relevant factors," including whether the employees "dealt with the same supervisor," and were subject to "the same standards.")

The last element of Ms. Kinney's prima facie claim—whether she was meeting her employer's legitimate business expectations—presents issues that also bear on the pretext questions. *See Adelman–Reyes v. St. Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007) ("The prima facie case and pretext inquiries often overlap; [courts] may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision.")

ASI contends that it was justified in taking a series of adverse employment actions against Ms. Kinney because of her failure to meet its legitimate expectations of performance. [Dkt. 38 at 20-23]; *Contreras v. Suncast Corp.*, 237 F.3d 756, 760-61 (7th Cir. 2001) (holding that a pattern of performance deficiencies is a legitimate reason for an employer to take an adverse employment action against an employee). According to ASI, when Luke Huls called the May 4 meeting with Ms. Ruckman, he had already experienced a number of issues with Kinney's job performance, many of which he had been overlooking while AISIN struggled with internal issues. When she was told she could not work on May 5, ASI argues, Ms. Kinney was defiant, and when she did return to work, she disobeyed policy and failed to maintain her commitment as set forth in her final written warning.

Where, as here, an employer offers a legitimate non-discriminatory reason for the adverse employment action at issue, the burden shifts back to the employee to show that this legitimate reason is mere pretext for discriminatory animus. *McGowan v. Deere & Co.,* 581 F.3d 575, 581 (7th Cir. 2009). To show pretext, an employee must come forward with evidence that at least

raises the inference that the employer's offered reason is a "phony excuse" for discrimination. *Benuzzi v. Board of Educ. of City of Chicago*, 2011 WL 2909904 (7th Cir. 2011). This requires the employee to do more than merely allege that "an employer's stated reasons are inaccurate; she must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Id.*; *see also Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997) ("A personality conflict doesn't ripen into an ADA claim simply because one of the parties has a disability."). Accordingly, an employee attempting to show pretext may draw upon circumstantial evidence giving rise to an inference of intentional discrimination. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 851 (7th Cir. 2010) (explaining that the analyses of circumstantial evidence under the direct method and pretext under the indirect method often overlap). Evidence giving rise to a material fact as to pretext must create a reasonable inference that "(1) it is more likely that a discriminatory reason motivated [the employer's] decision than the proffered non-discriminatory reason(s); or (2) that [the employer's] explanation is not credible." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006).

More specifically, the Seventh Circuit has held that when an employer offers shifting reasons for the adverse employment action at issue, it may thereby genuine issues of fact concerning pretext. *Zaccagnini v. Charles Levy Circulating Co.*, 338 F. 3d 672 (7th Cir. 2003); *O'Neal v. City of New Albany*, 293 F.3d 998, 1005-06 (7th Cir. 2002) (finding that the changed reasoning of the employer was sufficient to preclude summary judgment because a trier of fact could reasonably infer from that evidence that the defendants' proffered reasons were pretextual); *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999) ("[Defendant] changed its story between the time of the state administrative proceeding and the federal action .

. . . Under our case law, this changed story is evidence of pretext, and entitles [plaintiff] to a trial on the issue of the reason for his termination.").

Here, Ms. Kinney has offered evidence that gives rise to the inference of pretext. First, when she told Ms. Ruckman she needed to take medical leave, Ms. Ruckman responded that she "thought it was ridiculous," and that she believed Ms. Kinney was "overreacting." [Dkt. 41-1 at 2.] Next she offers evidence from which a reasonable jury could infer that the decision to terminate her employment was made during a May 4, 2009 meeting between Ms. Ruckman and Mr. Huls—which occurred within days of ASI learning of Ms. Kinney's disability, and wherein Ms. Ruckman acknowledged that ASI would have to proceed slowly to avoid a lawsuit. [Dkt. 39-1 at 5.] While Ms. Kinney was on leave, Ms. Ruckman asked Ms. Tinnell to write a statement about Ms. Kinney, which she then asked Ms. Tinnell to expand upon, which gives rise to the reasonable inference that Ms. Ruckman was looking for more damning information about Ms. Kinney in the statement. [Dkt. 41-4 at 5.] The next day, Ms. Kinney was prohibited from returning to work, even after she returned with her return to work release; when she did return the following day, she was reprimanded in front of the guards and allegedly stripped of her supervisory authority. Two weeks later, Ms. Ruckman issued Ms. Kinney a final written warning for failing to control the guards whom she believed she did not have control over at that point, while the guards who committed the infractions were not disciplined. [Dkt. 41-4 at ¶ 5.] Then, on June 1, still after Ms. Kinney believed her supervisory authority had been removed, Ms. Ruckman fired Ms. Kinney for failing to enforce the rules against guards using personal cell phones and wearing earrings—again, the other guards were not disciplined. [*Id.* at ¶ 7, 8] Ms. Ruckman then refused to tell Ms. Kinney why she was being fired. [Dkt. 39-3 at 15.]

Once it did start providing reasons, ASI's proffered reasons for Ms. Kinney's termination changed over time.  First, ASI stated to the EEOC that Ms. Kinney's employment was terminated because Ms. Kinney had falsified her time records and had violated the same policies of ASI on June 1, 2009 for which she had already been reprimanded on two separate occasions. [Dkt. 41-4 at 15.]  Then, in its Responses to Plaintiff's First Set of Interrogatories, ASI stated that "[Ms.] Ruckman terminated Kinney's employment that day (June 1, 2009) for failing to enforce the work rules among her guards in violation of her [final written warning]."  [Dkt. 21-5 at 1-2.]  Now, ASI cites several reasons for Ms. Kinney's termination that it never cited in the past, including alleged dishonesty surrounding her return to work, her purported failure to bring paperwork releasing her to return to work, and her challenging of ASI's refusal to allow her to return to work on May 5.  [Dkt. 38 at 23.]

Although ASI argues that these changing reasons do not preclude summary judgment because "[n]othing cited by Kinney [] conflicts with or is inconsistent with ASI's prior stated reasons," the Court finds—to the contrary—that the inconsistencies here are not mere supplements of earlier statements.  *Cf. Johnson v. Nordstrom, Inc.*, 260 F3d. 727 (7th Cir. 2001) (finding no pretext where an employer "simply supplemented its explanations in the context of EEOC charges and litigation . . . [and none of] its reasons [were] inconsistent or conflicting").[9]

---

[9] ASI also argues at length that "[i]f Ruckman was inclined to discriminate against Kinney because of her 'disability,' she could have taken the opportunity to terminate her as soon as Huls notified her of his concerns."  [Dkt. 44 at 18.]  In the same breath, however, ASI concedes that "it likely is true Ruckman wanted to 'go slowly' and avoid a lawsuit."  [*Id.* at 14.]  The Court is thus unpersuaded by this argument.  Furthermore, it should go without saying that this type of argument is improper on summary judgment as it seeks the benefit of inferences favorable to ASI , not Ms. Kinney.

### B. Direct Method of Proof

Ms. Kinney also puts forth circumstantial evidence of discrimination in her opposition to ASI's motion.

"To survive summary judgment under the direct method, [a plaintiff must] present either direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated his firing." *Burnell v. Gates Rubber Co*, 2011 WL 3132470, *3 (7th Cir. 2011). "Despite a plaintiff's use of the 'direct method,' [he] need not present direct evidence, such as an admission of discrimination, to survive summary judgment; he may establish a discriminatory motive on the part of the employer through a longer chain of inferences." *Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 2011 WL 2611303, *6 (7th Cir. 2011). Courts have described such an inferential chain as "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). Such circumstantial evidence may include suspicious timing; ambiguous statements; and evidence that similarly situated employees outside the protected class received systematically better treatment. *Burnell*, 3132470 at *3. Whether deemed a chain or mosaic, however, the assembled evidence must point "directly to a discriminatory reason for the employer's action" for a plaintiff's claim to survive summary judgment. *Adams v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.2003).

Here, Ms. Kinney directs the Court to just such an inferential chain. First, she notes the statements of Ms. Ruckman made at the time she requested her FMLA leave, including Ms. Ruckman's comments that she "thought it was ridiculous," that she believed Ms. Kinney was

"overreacting," and that "people get sad all the time, why do you need to go somewhere for it[?]" [Dkt. 41-1 at 2.]. Then, within days of first learning of Kinney's depression, Ms. Ruckman and Mr. Huls met to discuss firing or demoting Ms. Kinney. At that meeting, Ms. Ruckman admits she said she wanted to "go slowly" to deter Kinney from filing a lawsuit. Mr. Huls insisted that the change be made by June 1, 2009. [Dkt. 39-1 at 5.] Ms. Kinney was then fired on June 1, 2009, at which point Ms. Ruckman refused to tell Ms. Kinney why she was being fired. Then, ASI offered ambiguous, shifting reasons for the decision. [Dkt. 21-5 at 1-2; dkt. 41-4 at 15; dkt. 38 at 23.][10]

The Court finds that in light of the spurious timing, along with the ambiguous reasons for her termination, a reasonable jury could infer discriminatory animus on the part of the decisionmaker.

## C. ASI's Claimed Lack of Knowledge of Ms. Kinney's Disability

In its final challenge to Ms. Kinney's ADA claim, ASI argues that ASI could not have discriminated against Ms. Kinney on the basis of her disability because her mental health problems were "not known to ASI at the time it made the decisions concerning her employment." [Dkt. 44 at 12.] ASI is correct to point out that it must have known about her disability to be liable for discriminating on the basis of it. *EEOC v. Lee's Log Cabin, Inc.*, 554 F.3d 1102, 1104 (7th Cir. 2009) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because

---

[10] ASI cites to *Foster v. Arthur Andersen*, LLP 168 F.3d 1029, (7th Cir. 1999), for the proposition that spurious timing is not enough to show discrimination. [Dkt. 44 at 18.] *Foster,* however, has been overturned, and the Seventh Circuit has since recognized many times that spurious timing is evidence tending to permit a reasonable trier of fact to infer pretext, particularly where it is combined with other dubious evidence. *Miller v. Illinois Dept. of Transp.* 643 F.3d 190, 201 (7th Cir. 2011).

of' a disability unless it knows of the disability.  If it does not know of the disability, the employer is firing the employee 'because of' some other reason.").

ASI admits, however, that it learned about Ms. Kinney's need to take leave because of depression so severe she needed inpatient treatment.  It granted her FMLA request, thereby acknowledging she was suffering from a serious medical condition, on April 27.  [Dkt. 38 at 10.] ASI also acknowledges that no decision regarding Ms. Kinney's employment was made before May 4, and the critical decision to fire her was not made until June 1.  [Dkt. 44 at 8, 17.]   Both decisions post-date Ms. Kinney's disclosure to Ms. Ruckman of her depression, need for hospitalization, and suicidal thoughts.  ASI's argument that it cannot be liable because it was unaware of Ms. Kinney's disability therefore fails.

ASI's shifting reasons for firing Ms. Kinney, in conjunction with the other circumstantial evidence of discrimination Ms. Kinney presents, are enough to create a reasonable inference that discriminatory animus undermines ASI's stated motivations for her termination.  Through Ms. Ruckman, ASI was aware of Ms. Kinney's depression.  The Court therefore denies ASI's motion for summary judgment on Ms. Kinney's disability discrimination claim.

**V.**

**CONCLUSION**

For the foregoing reasons, the Court finds that a jury will have to determine the outcome of this case.  The Court **DENIES** ASI's Motion for Summary Judgment.  [Dkt. 38.]


08/09/2011

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribute via ECF only:**

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Geoffrey Mitchell Grodner
MALLOR GRODNER LLP
gmg@lawmg.net

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

Jennifer L. Romaniuk
MALLOR GRODNER LLP
jromaniuk@lawmg.net